FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2009 MAR 24 PM 12:56
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

MARK E. NANCE, )
)
Plaintiff, )
)
v. ) CV 108-069
)
MICHAEL J. ASTRUE, Commissioner )
of Social Security Administration, )
)
Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Mark E. Nance ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

### I. BACKGROUND

Based on claims of disability dating back to January 1, 2002, Plaintiff applied for DIB and SSI benefits on July 12, 2004. Tr. ("R"), pp. 66-69. The Social Security Administration denied his claims initially and upon reconsideration. R. 24, 29-32. Plaintiff then requested

a hearing before an Administrative Law Judge ("ALJ"), which was held by video on March 28, 2007. R. 391-424. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and a Vocational Expert ("VE"). R. 391. On February 8, 2008, the ALJ issued an unfavorable decision. R. 9-22.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 1, 2002, the alleged onset date.

2. The claimant has the following severe impairments: degenerative disc disease, obesity, motor polyneuropathy, and a personality disorder. See 20 C.F.R. §§ 414.1520(c) and 416.920(c).

3. However, the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. The claimant has the residual functional capacity ("RFC") to perform light work,[1] except that he must be allowed to shift from standing to sitting at will; he must avoid any climbing of ladders, ropes, or scaffolds; he is limited to only occasional bending, stooping, kneeling, crouching, or crawling; and he is limited to frequent interaction with the public and frequent close work with coworkers.

---

[1]Light work involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

2

> The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).
>
> 5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.[2] (20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), and 426.966). Accordingly, the claimant has not been under a disability from January 1, 2002, through the date of this decision.

R. 14-21.

When the AC denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). R. 5-7. Having failed to convince the AC to review his case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision. Plaintiff now argues that substantial evidence does not support the ALJ's decision denying Plaintiff's request for DIB and SSI. (Pl.'s Br., p. 1). Specifically, Plaintiff contends that (1) the ALJ failed to properly review, evaluate, and assign weight to the medical evidence; (2) the hypothetical questions posed to the VE were incomplete and did not account for all of Plaintiff's impairments; and (3) the Commissioner failed to file a proper transcript of the hearing. (Id. at 11-16). The Commissioner argues that the ALJ's findings are supported by the substantial evidence in the record and that he provided a complete administrative record. (Comm'r.'s Br., pp. 6-21).

---

[2]The VE testified at the evidentiary hearing that these jobs would include a gate guard, a sample mounter, and a ticket seller. R. 417.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary

4

evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff first argues that the ALJ erred in failing to state with particularity the weight given to the different medical opinions and the reasons therefor. (Pl.'s Br., p. 11). In his brief, Plaintiff notes that the ALJ made a "cursory list" of his medical records and summarily concluded that this evidence did not support the conclusion that Plaintiff was disabled. (Id. at 12). Plaintiff goes on to argue that the ALJ erred in failing to specifically address Plaintiff's back problems, mental health issues, and obesity in his opinion. The Commissioner argues in response that the ALJ properly weighed the medical evidence in the record, including those records related to Plaintiff's back problems, mental health, and obesity. (Comm'r.'s Br., pp. 6-8, 13-14). Notably, however, the Commissioner does not address Plaintiff's argument that the ALJ failed to state with particularity the weight he assigned each of the medical opinions in evaluating Plaintiff's claims.

5

A.  **Medical Evidence Regarding Back Problems**

Plaintiff suffered from back pain for several years prior to filing his claims for disability. In fact, the record reflects that Plaintiff sought treatment for his back problems as early as 1987. R. 14, 120-31, 195. As it concerns the claimed period of disability, Plaintiff has sought medical treatment from various sources, including the emergency room and orthopedic clinic at University Hospital, the Neighborhood Health Services Center ("NHCS"), and the Lamar Medical Center. R. 140-46, 155-266, 304-11. In March 2002, Plaintiff was diagnosed by Dr. Angela Overstreet at NHCS with back pain, R. 146, and numerous x-rays and MRIs confirmed that Plaintiff suffers from multiple back problems, including disc dessication, central disc bulges, a herniated disc, and degenerative disc disease. R. 155-56, 169, 174, 208, 271, 310, 322. In fact, Dr. Overstreet noted in 2006 that Plaintiff's back problems prohibited him from performing any manual labor. R. 271. Dr. Alan Rogers, a physician at the orthopedic clinic at University Hospital, also found that Plaintiff would be unable to lift more than 20 pounds. R. 166.

Upon filing for disability, Plaintiff's medical records were examined by state agency physicians, Dr. Dr. Paul Crank and Dr. Philip E. Gertler, who reached much different conclusions with respect to Plaintiff's functional capabilities. Both Dr. Crank and Dr. Gertler concluded, based on a review of Plaintiff's medical records, that Plaintiff could occasionally lift 50 pounds or more, frequently lift 25 pounds or more, sit and stand for at least 6 hours per day, and had unlimited push/pull capabilities. R. 133, 148. In short, these findings stand in sharp contrast to those of the physicians that examined Plaintiff.

The Court is aware that the ALJ is not required to refer to every piece of evidence in his decision. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). However, the Eleventh Circuit has also ruled, "The ALJ is required to 'state with particularity the weight he gave different medical opinions and the reasons therefor.'" Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (*per curiam*). Although the ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion, Bloodsworth v. Heckler, 703 F.2d 1233, 1240 (11th Cir. 1983), failure to explain the weight given to different medical opinions is reversible error. Sharfarz, 825 F.2d at 279. Furthermore, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(d)(1)-(2), (5).

Despite the fact that the ALJ listed and summarized various pieces of medical evidence in the record, he failed to state with particularity the weight he gave to each medical opinion, including those of Plaintiff's examining physicians from the orthopedic clinic and NHSC and the non-examining state agency physicians. The ALJ spends approximately four pages summarizing the medical evidence, and the Court will not re-iterate those statements in their entirety. However, the Court does provide a representative sample of the ALJ's summaries of the medical evidence from University Hospital, NHCS, and Lamar Medical Center, where Plaintiff's examining physicians were employed:

> He was seen at the orthopedic clinic [at University Hospital] on February 5, 2002 and reported a herniated disc for "at least" 15-16 years. On examination, the claimant was noted to move around with no apparent

7

> difficulty but appeared to be in "some discomfort." He has a negative left straight leg raise and a positive right straight leg raise. Lumbar imaging in February of 2002 indicated probable degenerative disc disease at L4-5. When seen by the orthopedist again on May 7, 2002, he reported improvement of his back pain and had a negative straight leg test bilaterally.
>
> . . . .
>
> . . . He returned to NHCS in February of 2005 and complained of a cyst on his chin as well as an increase in back pain and headache[s]. He described his back pain as feeling as though someone was kicking him. On March 22, 2005, the claimant had a lumbar MRI which showed disc desiccation and a herniated nucleus pulposus at L4-5 and a disc bulge at L5-S1.
>
> . . . .
>
> . . . In March of 2007, the claimant complained of low back pain after stepping off the porch a week previously. Also in March of 2007, the claimant established primary care at the Lamar Medical Center. He complained of severe lower back and leg pain, requesting medication stronger than Darvocet. At an April 2007 follow-up visit, the claimant reported back pain of 20 years duration; he had decreased lumbar motility and positive posterior tenderness. . . . Imaging on May 18, 2007, showed "chronic-appearing disc space narrowing at L4-5 and L5-S1" and noted "no obvious acute abnormality."
>
> . . . .
>
> An MRI dated October 29, 2007 showed further progression of degenerative disc disease at L5-S1 with no evidence of disc herniation. After some epidurals, the claimant continued to complain of pain. . . . An EMG was scheduled to rule out radiculpathy versus neuropathy. The EMG suggested significant motor polyneuropathy in the lower extremities and the claimant was placed on Neurotronin.

R. 15-17 (citations omitted).

Nowhere in any of these summaries does the ALJ specify what weight he assigned to the medical opinions of record in making his determination that Plaintiff was not disabled,

8

nor does he assign them weight elsewhere in his opinion. Rather, he disregards the opinions of Plaintiff's examining physicians and the medical evidence supporting them without explanation, even though they would appear to support Plaintiff's claims of disability. As noted above, Dr. Overstreet, the medical director of NHSC, opined that Plaintiff would be unable to perform "any manual labor" due to a herniated disc. R. 271. In addition, Dr. Rogers found that Plaintiff could lift no more than 20 pounds. R. 166. However, these opinions are not discussed anywhere in the ALJ's opinion. Also notably absent from the ALJ's opinion is any discussion of the opinions of Dr. Crank or Dr. Gertler, the two non-examining state agency physicians, or the weight he assigned to those opinions. The fact that the findings of Dr. Crank and Dr. Gertler are not discussed anywhere by the ALJ is especially surprising considering that they are the only medical opinions in the record that support the ALJ's conclusion that Plaintiff had the capacity to perform light work with the restrictions noted above. Indeed, light work includes "a good deal of walking or standing, or [work that] involves sitting most of the time with some pushing and pulling of arm or leg control," 20 C.F.R. §§ 404.1567(b) and 416.967(b), and both Dr. Crank and Dr. Gertler found that Plaintiff could sit, stand, or walk for a total of 6 hours during an 8 hour work day and had unlimited push/pull capabilities. R. 133, 148. In sum, the evidence and opinions from Plaintiff's examining physicians appear to support his claims of disability. However, the ALJ's opinion fails to state his reasons for disregarding them and instead following the opinions of the non-examining state agency physicians, which are, for unknown reasons, not addressed, much less assigned particular weight.

As noted supra, the ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor." Sharfarz, 825 F.2d at 279. Indeed, the Commissioner has recognized this duty in a case previously filed with the Court:

> However, when an ALJ rejects a treating physician or other examining source's medical opinion, he must give, "specific reasons for the weight given to the treating [or examining] source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating [or examining] source's medical opinion and the reasons for that weight." Social Security Ruling 96-2p.

Brown v. Comm'r of Social Sec., CV 306-077, doc. no. 9, n.7 (S.D. Ga. Apr. 2, 2007). In this case, however, the ALJ has failed to satisfy this requirement.

Simply stated, the ALJ has not stated with particularity the weight he gave to the opinions regarding Plaintiff's back problems, nor the reasons therefor. Moreover, he has failed to state his reasons for disregarding the evidence and opinions from Plaintiff's examining physicians and his reasons for following the opinions of the non-examining state agency physicians. While it could be surmised from the ALJ's decision that the examining physicians' opinions were given little weight and that those of the state agency physicians were given more weight, the Court is not at liberty to make such an assumption. Indeed, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*) (citing Bloodsworth, 703 F.2d at 1239). Moreover, even if such assumptions could properly be made, absent from the ALJ's opinion are any reasons for disregarding the evidence from Plaintiff's examining physicians, and failure to do so constitutes reversible error. Sharfarz, 825 F.2d at 279. As the ALJ did not state with

particularity the weight he gave any of the evidence and opinions before him or the reasons therefor, the Court cannot determine how the ALJ resolved the conflicting opinions.

The Court must review the decision as delivered by the ALJ, but here the Court is unable to perform any meaningful judicial review because the ALJ simply did not make his thought processes known in his decision. See Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985) (noting that in the absence of stating specifically the weight accorded each item of evidence, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence). Stated otherwise, this Court cannot now engage in an administrative review that was not done in the first instance by the Commissioner via the ALJ. Martin, 748 F.2d at 1031. The Court is mindful of the difficulties of evaluating a claimant's impairments and weighing the medical opinions that appear in an administrative record. Nonetheless, the law requires the Commissioner to provide a well-reasoned, well-articulated decision. The ALJ in this case undoubtedly failed to state with particularity the weight he gave to various opinions and pieces of evidence, much less provide an explanation for discrediting or accepting them. Accordingly, this case should be remanded for proper consideration, in the first instance at the administrative level of review, of all of opinions of record regarding Plaintiff's back problems.

**B.     Medical Evidence Regarding Mental Health Issues**

Plaintiff also argues that the ALJ erred in failing to properly consider the evidence regarding his mental health issues in determining that he should be restricted to frequent, as opposed to constant, contact with co-workers and the public. Plaintiff specifically notes his

documented history of anger management issues, including frequent arguments, losing control, damage to property, and physical assaults. R. 283-84, 298. The record also reveals that Plaintiff has a history of depression. R. 272-77. While the ALJ did not refer to these issues specifically in his opinion, he did generally note Plaintiff's mental health at one point in his summary of the medical evidence: "In October of 2006, the claimant had been referred to mental health treatment after a misunderstanding at the neighborhood clinic. He reported symptoms of tearfulness, decreased appetite, decreased sleeping, and chronic pain." R. 16. The ALJ noted Plaintiff's general anger management issues in limiting Plaintiff to frequent, as opposed to constant, contact with the public and co-workers. R. 20.

Quite different from the problems with the ALJ's assessment of the medical evidence related to Plaintiff's back problems, the ALJ barely mentions Plaintiff's documented history of depression and mental health treatment. Indeed, several of Plaintiff's medical records note a past medical history and complaints of depression. R. 274, 276, 286, 289, 304, 346. Moreover, the ALJ notably excludes from his opinion a discussion of the treatment notes from the Community Mental Health Center, which note Plaintiff's self-reported history of losing control, damaging furniture and other property, and assaulting unnamed individuals. R. 283. Plaintiff's history of violent behavior is also noted in an evaluation from Serenity Behavioral Health Systems. R. 298. Based on Plaintiff's general "problems with anger management," the ALJ concluded that Plaintiff should be limited to frequent, as opposed to constant, contact with co-workers and the public. R. 20. However, he fails to identify any opinion or piece of medical evidence that supports this limitation, much less explain his

12

reasons for finding that an individual with a history of destructive behavior and violent outbursts should have frequent contact with others.

In the absence of a statement specifying the evidence supporting the conclusions reached by the ALJ and the weight accorded to them, the Court is unable to determine whether the ALJ's decision is rational and supported by the substantial evidence. See Hudson, 755 F.2d at 786. Moreover, as noted above, the Court's "limited review [of the record] precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." Moore, 405 F.3d at 1211 (citing Bloodsworth, 703 F.2d at 1239). The ALJ in this case undoubtedly failed to address certain medical evidence in the record. Indeed, he barely mentioned the medical evidence related to Plaintiff's mental health on which he relied in making his findings, much less specify the weight accorded. Nor does he discuss other evidence that would appear to support further limitations on Plaintiff's social interactions. Given the absence of a well-reasoned, well-articulated decision, it is impossible to determine whether the ALJ applied the proper legal standards in assessing Plaintiff's limitations as they relate to his mental health issues. Accordingly, this case should be remanded for proper consideration, in the first instance at the administrative level of review, of all the evidence of record regarding Plaintiff's mental health issues.

C.  **Medical Evidence Regarding Obesity**

The same cannot be said for the medical evidence regarding Plaintiff's obesity. At the second step of the sequential evaluation process, the ALJ found that Plaintiff's obesity was a severe impairment, R. 14, and the substantial evidence supports this finding. Indeed, the ALJ noted the physical examination performed by Dr. Frederick M. House, which noted

13

that Plaintiff is 5 feet and 5 inches tall, and weighs 225 pounds. R. 268. Moreover, Dr. House specifically noted that Plaintiff's abdomen was very obese, id., and other medical records before the ALJ confirmed Plaintiff's obese condition during the relevant period. R. 304, 306, 309, 317, 329. Thus, substantial evidence supports the ALJ's determination that Plaintiff suffered from the severe impairment of obesity.

The ALJ went on to limit Plaintiff's RFC to light work with the following physical restrictions: a sit/stand option, a prohibition on climbing ladders, ropes, or scaffolds, and only occasional bending, stooping, kneeling, crouching, or crawling. R. 18. While recognizing that the ALJ fails to state with particularity how Plaintiff's obese condition affected this determination, the ALJ's determination of Plaintiff's RFC necessarily accounted for this impairment. Moreover, even though Plaintiff challenges the ALJ's failure to consider the evidence of obesity in his opinion, he fails to specify how his obese condition is not accounted for in the ALJ's determination that he had the ability to perform light work or identify any piece of medical evidence that would warrant further restrictions on his RFC. See Burch v. Barnhart, 400 F.3d 676, 682-83 (9th Cir. 2005) (finding that the ALJ did not err in failing to consider claimant's obesity in assessing his RFC where claimant failed to specify the impact of his obesity on this determination); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). Stated differently, Plaintiff has failed to establish how his obese condition impacts his abilities, nor are any further limitations reflected in the record.

In sum, Plaintiff's argument that the ALJ failed to consider evidence of Plaintiff's obesity is contradicted by the record, as the ALJ specifically noted Dr. House's observation of Plaintiff's weight. In addition, Plaintiff has failed to specify how his obesity further

restricts his abilities beyond that found by the ALJ. Thus, Plaintiff's argument that the ALJ erred in failing to consider the medical evidence regarding his obesity is without merit and does not provide a basis for remand.[3]

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 24th day of March, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[3]Plaintiff's remaining arguments concern the hypothetical questions posed to the VE and the alleged incomplete administrative record. However, these arguments need not be addressed, as the underlying assumptions of hypothetical questions posed by an ALJ must accurately and comprehensively reflect the claimant's characteristics, and the Court has recommended remand for proper consideration of the evidence and opinions with respect to Plaintiff's back problems and mental health issues. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp. 2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe claimant's impairments and limitations including that claimant "often" has deficiencies in concentration, persistence or pace, is grounds for remanding case for further proceedings).

15